## BEFORE THE UNITED STATES
## JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION

| | |
|---|---|
| **IN RE: BPS AND CABELA'S WIRETAPPING LITIGATION** . | MDL No. |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF ARLIE TUCKER FOR THE TRANSFER OF RELATED ACTIONS TO THE WESTERN DISTRICT OF MISSOURI FOR COORDINATED OR CONSOLIDATED <u>PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407</u>

## I.   <u>INTRODUCTION</u>

Six Related Actions in five disparate jurisdictions[1] all allege BPS Direct, LLC ("BPS"), Cabela's Inc, and Cabela's Retail Mo, LLC (together, "Cabela's") surreptitiously intercepted, disclosed and/or wiretapped the electronic communications of visitors to their websites, www.cabelas.com and www.basspro.com, in violation of state and federal privacy laws. Plaintiff Arlie Tucker ("Plaintiff Tucker")[2] submits that all Related Actions should be transferred to the United States District Court for the Western District of Missouri for consolidation or coordination of pretrial proceedings.

The Related Actions and any subsequently filed tag-along actions should be transferred to one district because they essentially allege the same events and identical conduct by BPS and Cabela's, sometimes in the same proceeding for both defendants and others in different actions, and because transfer for consolidated or coordinated proceedings would advance judicial efficiency. The Western District of Missouri is the most appropriate forum for transfer because:

- Two Related Actions have already been consolidated and are pending in the Western District of Missouri;

---

[1] The Related Actions are pending in the District of Massachusetts, the Southern District of California, the Western District of Missouri, the Eastern District of Pennsylvania, and the Western District of Pennsylvania. (collectively, the Related Actions"). Plaintiff Tucker is also aware of one pending state court action, *Garcia v. BPS Direct, LLC*, Case No. 23STCV01281 (Sup. Ct. Cal.).

[2] Plaintiff Tucker previously filed two actions: (1) *Tucker v. Cabela's, Inc. et al.*, Case No. 6:22-cv-03288 (W.D. Mo.) and (2) *Tucker v. BPS Direct, LLC*, Case No. 6.22-cv-03285 (E.D. Mo.) that were consolidated before Judge Stephen R. Bough in the W.D. Mo. on January 17, 2023. All future filings are to be made in *Tucker v. BPS Direct*, *LLC et al.*, Case No. 6.22-cv-03285 (W.D. Mo.).

- Judge Stephen R. Bough is familiar with the proceedings and has already ruled on one consolidation motion;

- The Court's civil docket is efficient; and

- The Western District of Missouri is geographically convenient to the parties and witnesses in the Related Actions.

## II.    BACKGROUND

### A. All Related Actions Allege the Same Conduct by BPS and Cabela's.

As of January 31, 2023, at least seven (7) putative class action lawsuits (two of which have been consolidated) have been filed on behalf of consumers alleging wiretapping and other violations arising from the disclosure of their electronic communications from the websites of BPS and Cabela's. According to all of the Plaintiffs in the Related Actions, BPS and Cabela's, which are owned by the same parent company, procure third-party vendors to embed snippets of JavaScript computer code ('Session Replay Code') on their websites, which then deploy on each website visitor's internet browser for the purpose of watching, intercepting, and recording the website visitor's electronic communications with the BPS and Cabela's websites, including their mouse movements, clicks, keystrokes (such as substantive information being entered into an information field or text box), URLs of web pages visited, and other electronic communications in real-time ("Website Communications"). Third-party vendors ('collectively, Session Replay Providers") create and deploy the Session Replay Code at BPS and Cabela's requests. The Related Actions share common questions of fact and law,

and all arise out of allegations that the wiretaps intercept and capture the Website Communications of BPS and Cabela's website visitors.

### B. The Related Actions are Pending in Multiple Jurisdictions

As of the date of this filing, there are currently six (6) Related Actions pending in five (5) federal district courts.  One Related Action (which was previously two Related Actions) is currently pending in the Western District of Missouri, *Tucker v. BPS Direct, LLC et al.*, Case No. 6:22-cv-03285-SRB (W.D. Mo.).  As previously noted, Plaintiff Tucker's previous two complaints, one alleging violations against BPS and one against Cabela's, were previously consolidated before Judge Stephen Bough in the Western District of Missouri. *See Tucker*, Case No. 6:22-cv-03285-SRB, ECF No. 18 (W.D. Mo. Jan. 17, 2023).  Two Related Actions, *Calvert v. Cabela's LLC*, Case. No. 22-01460 (W.D. Pa. Oct. 14, 2022) and *Cornell v. BPS Direct, L.L.C. d/b/a Bass Pro Shops*, Case No. 1:23-cv-20 (W.D. Pa. Feb. 1, 2023), have been filed in the Western District of Pennsylvania. One Related Action, *VonBergen v. BPS Direct, LLC,* Case No. 2:22-cv-04709-KBH (E.D. Pa. Nov. 23, 2022), has been filed in the Eastern District of Pennsylvania.  One Related Action, *Moore v. BPS Direct, LLC.*, Case No.22-01951 (S.D. Cal. Dec. 9, 2022) was filed in the Southern District of California.  Finally, one Related Action, Montecalvo v. Cabela's Inc., Case No. 22-11837 (D. Mass Oct. 27, 2022) was filed in the District of Massachusetts.

## III.   ARGUMENT

### A. Centralization in One District Will Ensure the Just and Efficient Conduct of the Actions and Avoid Inconsistent or Conflicting Determinations.

28 U.S.C. §1407(a) provides in relevant part:

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

Because the Related Actions involve common or virtually identical legal and factual questions and because all Plaintiffs in the Related Actions bring their claims as class actions under Rule 23 of the Federal Rule of Civil Procedure, transfer of the Related Actions to a single forum under 28 U.S.C. § 1407(a) is appropriate.

Transfer of the Related Actions to a single forum under Section 1407 will prevent duplication of discovery and avoid overlapping or inconsistent determinations by courts in different jurisdictions.  *See In re Domestic Airline Travel Antitrust Litig*., 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary."); *accord In re: Community Health Sys., Inc. Customer Sec. Data Breach Litig*., MDL No. 2595, 84 F. Supp. 3d 1362, 1362-63 (J.P.M.L. Feb. 4, 2015); *In re NCAA Student- Athlete Concussion Injury Litig.*, MDL No. 2492, 2013 WL 6825602, at *3 (J.P.M.L. Dec. 18, 2013); *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, MDL No. 2441, 2013 WL 2635989

(J.P.M.L. June 12, 2013); *In re Parallel Networks, LLC*, 867 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012); *In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices & Prods. Liab. Litig.*, 655 F. Supp. 2d 1367 (J.P.M.L. 2009).

**B.   The Related Actions Share Common Questions of Law and Fact.**

In addition, the presence of common legal and factual questions also supports transfer under Section 1407.  *See In re Generic Drug Pricing Antitrust Litig.*, MDL No. 2724, 2016 WL 4153602, at *2 (J.P.M.L. Aug. 5, 2016); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 374 F. Supp. 2d 1353, 1354 (J.P.M.L. 2005). As the Panel has held, "[t]ransfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).

The individual complaints in the Related Actions involve many common questions of fact and law.  As noted above, in all Related Actions, the complaints largely focus on the same invasions of privacy, by the same defendants, through the same use of the Session Replay Technology.  Namely, BPS and Cabela's practices of hiring third-party vendors to embed snippets of Session Replay Code on their websites, which then deploy on each website visitor's internet browser for the purpose of watching, intercepting, and recording the website visitor's electronic communications with the BPS and Cabela's websites, including their mouse movements, clicks, keystrokes (such as substantive information being entered into an information field or text box), URLs of web pages visited, and other

electronic communications in real-time (the Website Communications). Session Replay Providers create and deploy the Session Replay Code at BPS and Cabela's requests.

Each of the Related Actions also has similar legal claims. Each alleges class claims and similar common law and statutory theories, and the alleged classes overlap. In comparing the allegations of the Related Actions, common questions abound, including, but not limited to: (1) whether BPS and Cabela's violated state and federal wiretapping laws; (2) whether BPS and Cabela's intercepted or procured another to intercept Plaintiffs' electronic communications; (3) whether BPS and Cabela's are liable for damages, and the amount of such damages.

The overlap here is sufficient to merit transfer and coordination pursuant to Section 1407. *See, e.g., In re Local TV Advertising Antitrust Litig.*, 338 F. Supp. 3d 1341 (J.P.M.L. 2018) (transfer was appropriate where actions commonly alleged that a conspiracy was effectuated by sharing competitively sensitive information); *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377, 1379 (J.P.M.L. 2002) (to the extent non-common issues arise, transfer can have the "salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that [] allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues").

Instead, common questions of fact exist where two or more complaints assert comparable allegations against similar defendants based on similar transactions and events. *See, e.g., In re: Fed. Home Loan Mortgage Corp. (Freddie Mac) Sec. Litig.*, 643 F. Supp. 2d 1378, 1380 (J.P.M.L. 2009) (concluding that centralization is appropriate where "all

actions [could] be expected to focus on a significant number of common events, defendants, and/or witnesses" and a "common factual core" existed among the actions).

Moreover, all Plaintiffs in the Related Actions bring their claims as class actions under Rule 23 of the Federal Rules of Civil Procedure, which also favors transfer for coordination or consolidation. *See In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359 (J.P.M.L. 2008) (transferring actions where all actions shared factual questions, citing the need to prevent inconsistent rulings, especially on class certification); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (ordering transfer "in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002) (holding transfer necessary "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary"). The Panel has "consistently held that the existence of and the need to eliminate [the possibility of inconsistent class certification rulings] presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Express, Inc. Emp't Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974); *see also In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (explaining that Section 1407 was designed to prevent "pretrial chaos" resulting from "conflicting class action determinations").

Here, centralization is particularly useful given that there are multiple actions against two different defendants where both defendants have argued that the cases should

be consolidated because BPS and Cabela's are "common parties" and "related entities" such that all cases against the two sets of corporate entities ought to be litigated together. *See Tucker*, Case No. 6:22-cv-03285-SRB, ECF No. 17 at 1 (W.D. Mo. Jan. 17, 2023). According to that pleading and Defendants' corporate disclosure statement in the action, "BPS Direct, LLC, Cabela's LLC, and Cabela's Retail Mo, LLC are all owned (either directly or indirectly) by Bass Pro LLC." *Id.* at 2.

## C. The Western District of Missouri is the Most Appropriate Transferee Forum

Under Section 1407(a), the Panel may transfer actions to "any district" and has wide discretion to choose the transferee court. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007); Alba Conte & Herbert Newberg, Newberg on Class Actions, §9:16 (4th ed.).  When determining the most appropriate forum the Panel considers, among other things: (1) the procedural advancement of an action; (2) the familiarity of a judge with the proceedings; (3) the efficiency of a court's civil docket; and (4) a central location for national litigation. *See id.* The final factor includes consideration of the location of parties, witnesses and documents. *In re Am. Cont'l Corp./Lincoln Savings & Loan Securities Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1990). According to the Manual Complex Litigation, "[t]he Panel uses no single factor to select the transferee district," but may consider both the factors outlined above and also "where the largest number of cases is pending, where discovery has occurred, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available

judges." Manual for Complex Litigation, § 20.131. Here, the factors, taken together, favor transfer to the Western District of Missouri.

## 1.  **The Procedural Advancement of the Actions.**

In determining an appropriate transferee forum, the Panel first considers the procedural advancement of the cases filed. The Panel has expressed a preference for a transfer to a forum in which the greatest number of cases are pending. *In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 435 F. Supp. 2d 1340, 1342 (J.P.M.L. 2006) (transferring actions to the Northern District of Illinois where the majority of related actions had been filed); *In re OxyContin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1398 n.1 (J.P.M.L. 2004) (transferring actions to the Southern District of New York where twenty-three out of forty-one actions were already pending in that district).

Here, two cases filed by Plaintiff Tucker that have now been consolidated are in the Western District of Missouri. Although this is not a substantial majority of the cases, of the remaining five Related Actions filed, this is one of only two districts that has more than one filing and the only one that has consolidated the two actions, making it the most procedurally advanced.

Thus, this factor favors transferring the Related Actions to the Western District of Missouri.

## 2.  **Judge Stephen R. Bough Is Familiar with the Proceedings.**

The familiarity of a judge with the proceedings is the second factor considered by the Panel in assigning to the most appropriate transferee forum. Here, the Honorable Stephen R. Bough has been assigned the only consolidated case of the actions against BPS

10

4869-1962-2222, v. 3

and Cabela's and has the ability to prudently guide this litigation. He has already ruled on a consolidation motion and has the most familiarity of any judge with the cases.  In addition, Judge Bough has approximately nine years on the federal bench, which has afforded him the opportunity to preside over 11 MDLs. Prior to his appointment to the federal bench, Judge Bough practiced for 15 years.[3]  During that time, Judge Bough litigated in Kansas City for three years at Shamberg, Johnson & Bergman and while owning his own firm for 12 years.[4] Judge Bough has experience as a litigator and able jurist affording him all right to efficiently and effectively preside over complex litigations.

As a result, this factor favors transfer of the Related Actions to the Western District of Missouri.

### 3.  The Efficiency of the Court's Civil Docket.

The next factor the Panel considers is the efficiency of a court's civil docket in determining the appropriate forum for adjudication of a multidistrict litigation.

The Western District of Missouri has experience handling MDL proceedings and has efficiently administered its docket. The Western District of Missouri has 487 pending cases and 473 weighted filings per judgeship.[5] Despite having a significant number of cases, the median time from filing to disposition for all civil cases in the district is only 7.3

---

[3] *See* United States District Courts – District Court Judges, *available at* https://www.mow.uscourts.gov/judges/bough (last accessed Feb. 1, 2023).
[4] *Id.*
[5] *See* U.S. District Courts- Combined Civil and Criminal Federal Management Statistics (June 30, 2022), *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

4869-1962-2222, v. 3

months.[6] Furthermore, in particular, Judge Bough manages his docket well, issuing on average 161 judicial opinions a year.[7] This factor supports the Western District of Missouri as the transferee forum.

### 4. The Western District of Missouri Is Geographically Convenient to The Parties and Witnesses in The Related Actions.

In addition to being the Court with a strong nexus to this litigation, the Western District of Missouri provides a central location allowing easy access for all litigants and witnesses. Defendant, Cabela's Inc. has its principal place of business in the neighboring state of Nebraska, and Defendant, BPS Direct has its principal place of business in Springfield, Missouri, which is located within the Western District of Missouri.

The Panel routinely assesses the ease of access when selecting the transferee forum. *In re AirCrash Near Van Cleve, Miss., On August 13, 1977*, 486 F. Supp. 926,928 (J.P.M.L. 1980); *In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 543 (J.P.M.L. 1981). For the parties further away, and not within a reasonable driving distance of Kansas City, MO, Kansas City International Airport ("MCI") is within 19 miles of the Western District of Missouri, Charles Evans Whitaker U.S. Courthouse.[8] Notably, MCI provides direct flights to and from over 40 major cities in the U.S. and Mexico.[9]

---

[6] *Id.*

[7] *See* Motion Analytics Report for Bough, Hon. Stephen R. (Westlaw) (2023) (average calculated from 2015, Judge Bough's first full year on the court, to February 1, 2023).

[8] This was calculated using the following addresses: (1) Kansas City International Airport, located at 1 International Square, Kansas City, MO 64153; and (2) the Charles E. Whittaker, U.S. Courthouse, located at 400 E. 9th Street, Kansas City, MO 37902.

[9] MCI Nonstop Destinations, *available at* https://www.flykci.com/flight-information/nonstop-destinations/ (last accessed Feb. 1, 2023).

Therefore, the Western District of Missouri, sitting in Kansas City would be a convenient transferee forum for those parties and witnesses that may be located on either the East or West Coasts, making the Western District of Missouri as the transferee forum uniquely accessible and convenient to all litigants and witnesses.

## IV.    <u>CONCLUSION</u>

As the four factors above have outlined, transferring the Related Actions for coordination and consolidation to the Western District of Missouri is the best fit for the transferee forum. Accordingly, Plaintiff Tucker requests that this Panel transfer all pending Related Actions, as well as any subsequently filed Related Actions, to the United States District Court for the Western District of Missouri.

Dated February 15, 2023                    Respectfully submitted,

<u>*s/ Kate M. Baxter-Kauf*</u>
Kate M. Baxter-Kauf (MN #0392037)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com
*Attorney for Plaintiff Tucker*

13