BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: BPS Direct, LLC, and Cabela's, LLC, Wiretapping Litigation | MDL No. 3074 |

# DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO THE WESTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. § 1407

Defendants BPS Direct, LLC, Cabela's, LLC, and Cabela's Retail MO, LLC (together, "BPS and Cabela's Defendants") respectfully submit this response in opposition to Plaintiff's Motion for Transfer of Actions to the Western District of Missouri Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.

## INTRODUCTION

Plaintiff's motion seeks to transfer and consolidate six actions presently pending in the Western District of Missouri, the Western District of Pennsylvania, the Eastern District of Pennsylvania, the Southern District of California, and the District of Massachusetts.[1] But the proposed transfer and consolidation of the actions subject to Plaintiff Arlie Tucker's motion would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of this litigation.

---

[1] The actions Plaintiff seeks to transfer and consolidate include: (1) *Tucker v. BPS Direct, LLC*, Case No. 6:22-cv-03285-SRB (W.D. Mo.); (2) *Calvert v. Cabela's LLC*, Case No. 22-01460 (W.D. Pa.); (3) *VonBergen v. BPS Direct, LLC*, Case No. 2:22-cv-04709-KBH (E.D. Pa.); (4) *Cornell v. BPS Direct, LLC d/b/a Bass Pro Shops*, Case No. 1:23-cv-20 (W.D. Pa.); (5) *Moore v. BPS Direct, LLC*, Case No. 22-01951 (S.D. Cal.); (6) *Montecalvo v. Cabela's Inc.*, Case No. 22-11837 (D. Mass.). One additional action has been filed since the time of Plaintiff's Motion – *Hernandez v. BPS Direct LLC*, Case No. Case No. LKG-23-413 (D. Md.).

*First*, this Panel has found that where, as here, only a relatively small number of cases are sought to be coordinated through an MDL proceeding, efficiencies and conveniences can appropriately be achieved through informal coordination between the courts and counsel, and without the need for a centralized MDL proceeding.

*Second*, transfer and consolidation is not necessary here. Informal coordination is not only feasible, but has already occurred. The action pending in the Western District of Missouri was originally two separate actions, *Tucker v. BPS Direct, LLC*, and *Tucker v. Cabela's LLC, et al.*, which—upon Defendant BPS Direct, LLC's motion—were consolidated before Judge Stephen R. Bough. *See Tucker*, Case No. 6:22-cv-03285-SRB, Dkt. 14. In addition, BPS Direct, LLC, is currently seeking consolidation of *Vonbergen* (E.D. Pa.) and *Cornell* (W.D. Pa.) with the first-filed *Calvert* action pending in the Western District of Pennsylvania. This Panel has denied centralization where, as here, other methods of consolidation and coordination are feasible.

*Third*, transfer would not promote fairness or efficiency because these cases present significantly different questions of law and fact. Instead, these cases assert claims under their various states' laws—which is why consolidation within the relevant jurisdictions and informal discovery coordination across jurisdictions is the most efficient means of adjudication.

*Fourth*, motions to dismiss are pending in three of the six (now seven) actions. Those motions should be resolved to determine the viability of plaintiffs' claims and to avoid needless discovery. Moreover, the motions feature local issues, which should be resolved by local courts.

*Fifth*, and finally, consolidation would not be more convenient for the parties or witnesses.

For all these reasons, Plaintiff's motion should be denied.

**BACKGROUND**

The named plaintiffs in the six actions identified in Plaintiff's motion (and the seventh recently filed action) have filed copycat complaints challenging BPS and Cabela's Defendants' use of routine software-based solutions that improve the design, functionality, and user experience of its customer-facing website. Specifically, Plaintiffs claim that the software BPS and Cabela's Defendants use to identify, troubleshoot, and remediate bugs on its website constitutes "wiretapping" and an "intrusion upon seclusion" under various states' laws. On February 15, 2023, Plaintiff Arlie Tucker asked the Panel to create an MDL in the Western District of Missouri. Plaintiff's motion identified six separate putative class actions of which he sought transfer and consolidation pursuant to Section 1407. As set forth below, of those six cases, BPS and Cabela's Defendants have sought consolidation of the three actions pending in Pennsylvania, and the parties are exploring resolution of one other action:

*Calvert v. Cabela's LLC*, Case No. 22-01460-WSH (W.D. Pa.): The *Calvert* lawsuit was filed in the Western District of Pennsylvania on October 14, 2022, and is the first-filed case. The complaint asserts claims for an alleged violation of the Pennsylvania Wiretap Act and Intrusion Upon Seclusion. Cabela's LLC filed a motion to dismiss the complaint on December 8, 2022, and instead of filing an opposition to Cabela's LLC's motion, plaintiff filed an amended complaint on December 29, 2022. Cabela's LLC filed a motion to dismiss the amended complaint on February 13, 2023. Plaintiff's response to Cabela's LLC's motion is due on March 6, 2023; however, Plaintiff has moved to stay the case pending this Panel's adjudication of the instant Motion. *See Calvert*, Dkts. 1, 9, 11, 16, 19, 20.

*Montecalvo v. Cabela's Inc.*, Case No. 22-11837 (D. Mass.): The *Montecalvo* action was the second-filed lawsuit, and asserts claims for an alleged violation of the Massachusetts

Wiretapping Statute and Intrusion Upon Seclusion. Cabela's Inc. filed a motion to dismiss the complaint on January 6, 2023. Plaintiff opposed the motion on February 6, 2023, and Cabela's Inc. filed a reply in support of its motion on February 20, 2023. The motion remains pending. *See Montecalvo*, Dkts. 1, 19, 21, 22.

*Tucker v. BPS Direct, LLC*, Case No. 6:22-cv-03285-SRB (W.D. Mo.): The *Tucker* plaintiff—who asserts this request for MDL coordination—filed the third (and fourth) lawsuit. The complaint brings claims pursuant to the Missouri Wiretap Act, the Missouri Merchandising Practices Act, Intrusion Upon Seclusion, Trespass to Chattels, the Electronic Communications Privacy Act, the Stored Communications Act, and the Computer Fraud and Abuse Act. As a result of agreement among counsel, the *Tucker v. BPS Direct, LLC* lawsuit (the fourth lawsuit) was consolidated with the *Tucker v. Cabela's LLC et al.*, as noted above. *See Tucker*, Dkts. 1, 17, 18.

*Vonbergen v. BPS Direct, LLC*, Case No. 2:22-cv-04709-KBH (E.D. Pa.): The *Vonbergen* action was filed on November 23, 2022, in the Eastern District of Pennsylvania. The complaint asserts a single claim under the Pennsylvania Wiretap Act. On January 18, 2023, BPS Direct, LLC filed a motion to transfer to the Western District of Pennsylvania to be consolidated with the first-filed *Calvert* action. Of note, at the time of BPS' Motion, Plaintiff opposed consolidation of this case with *Calvert*, indicating that he did not have enough information about how BPS and Cabela's were related or whether their use of technology was the same. That motion remains pending. *See VonBergen*, Dkts. 1, 7.

*Moore v. BPS Direct, LLC*, Case No. 22-01951 (S.D. Cal.): The *Moore* action was filed on December 9, 2022, in the Southern District of California. The complaint asserts claims under the Electronic Communications Privacy Act and for an alleged Unlawful Wiretapping and Interception of Electronic Communication under the California Penal Code. The parties in *Moore* are exploring

3

the possibility of resolving that case. *See Moore*, Dkt. 12 ("The parties believe they are close to determining whether a resolution is possible at this juncture.").

*Cornell v. BPS Direct, LLC d/b/a Bass Pro Shops*, Case No. 1:23-cv-20 (W.D. Pa.): The *Cornell* action was filed on February 1, 2023, in the Western District of Pennsylvania. The complaint asserts claims under the Pennsylvania Wiretap Act and for Intrusion Upon Seclusion. On February 23, 2023, BPS Direct, LLC filed a motion to consolidate *Cornell* with the first-filed *Calvert* action. Plaintiff has opposed the consolidation of *Cornell* with *Calvert* in the Western District of Pennsylvania, in favor of consolidation of all cases in an MDL. On February 24, 2023, BPS Direct, LLC filed a motion to dismiss the complaint; plaintiff's response is due on March 16, 2023; however, Plaintiffs Calvert and Cornell have moved to stay proceedings pending the Panel's decision on this Motion. *See Cornell*, Dkts. 1, 7, 8, 11, 12.[2]

Finally, since the filing of Plaintiff's Motion, an additional action was filed in the District of Maryland, alleging a violation of Maryland's wiretapping statute and a common law clam for intrusion upon seclusion. *See Hernandez v BPS Direct, LLC d/b/a Bass Pro Shops*, Case No. LKG-23-413 (D. Md.).

## ARGUMENT

As this Panel has recognized, "centralization under Section 1407 should be **the last solution after considered review of all other options**." *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (JPML 2011) (emphasis added). A Section 1407 motion should only be granted if doing so "would serve the convenience of the parties and witnesses or further the just and efficient conduct of [] litigation." *In re TD Bank, N.A.*, 703 F.

---

[2] The California state court matter mentioned in Plaintiff's Motion concerns a different feature of BPS's website. *Garcia v. BPS Direct LLC*, Case No. 23STCV01281 (Los Angeles County, CA Superior Court).

4

Supp. 2d 1380, 1381 (J.P.M.L. 2010). Section 1407 requires that each of the following threshold criteria be satisfied to create an MDL proceeding: (1) the actions must share a common question of fact; (2) the transfer must be for the convenience of the parties and witnesses; and (3) the transfer must advance the just and efficient conduct of the actions. 28 U.S.C. § 1407(a); *see also In re Highway Accident Near Rockville, Conn.*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met."). The Panel considers the interests of all parties and the appropriateness of multidistrict litigation as a whole in light of the purposes of Section 1407. *In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 229 (J.P.M.L. 1978). Applying these principles, the Panel has looked to the following factors, among others, to determine whether transfer under Section 1407 is warranted: convenience of counsel; convenience of witnesses; minimizing duplicative discovery; and possibility of conflicting rulings. *Manual for Complex Litigation*, § 20.131 (4th ed. 2004).

Plaintiff has the burden to demonstrate that section 1407(a)'s requirements are satisfied. *See In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. 1343, 1345 (J.P.M.L. 1980). Plaintiff has not met that burden. In fact, he has provided almost no concrete details about what benefits consolidation would achieve. *See In re American-Manufactured Drywall Prods. Liab. Litig.*, 716 F. Supp. 2d 1367, 1368 (J.P.M.L. 2010) ("The proponents of centralization have not convinced us that any efficiencies from centralization would outweigh the multiple individualized issues, including ones of liability and causation, that these actions appear to present.").

**A. Plaintiff's Motion Should Be Denied Because Transfer Will Not Promote the Just and Efficient Conduct of These Proceedings and Adequate Alternatives to Transfer Exist.**

    **1. There are not enough cases pending to warrant MDL coordination.**

The "most important prerequisite to obtaining a transfer under Section 1407 MDL transfer

5

and consolidation is a showing that the just and efficient conduct of the actions will be served thereby." 15 Charles Alan Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3863 at 489 (4d ed. 2014) (citation omitted). Here, Plaintiff seeks to consolidate only six separate matters. Three of those matters are pending in Pennsylvania, where the parties have already started the consolidation process. And the parties in *Moore* are exploring resolution of that matter. Thus, consolidation may only involve *four* matters—*Tucker*, the consolidated Pennsylvania actions, *Montecalvo*, and *Hernandez* (filed after Plaintiff's Motion).

With so few cases, "the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Hyundai & Kia GDI Engine Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1343 (J.P.M.L. 2019). Plaintiff has not, and cannot, meet his heavy burden of demonstrating that the consolidation of seven (or four) matters would create significant economy and efficiency of judicial administration. Indeed, the Panel has noted that where, as here, there are only relatively few actions pending, "it is doubtful the transfer would enhance the convenience of parties and witnesses or promote judicial efficiency." *In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (quoting S. Rep. No. 90-454, at 4-5 (1968)); *accord In re Highway Accident in Buffalo Cty., Neb., on Aug. 22, 2000*, 305 F. Supp. 2d 1359, 1360 (J.P.M.L. 2004). For that reason, the Panel has recently declined to consolidate cases where only a small number of matters were pending and informal coordination was feasible. *See In re Geico*, 2021 WL 4704797, at *1 (declining to consolidate cybersecurity class actions where only five actions were pending, three before a single judge, and coordination among the small number of parties and involved courts appeared "eminently feasible"); *see also In re: SFPP, L.P. Railroad Property Rights Litigation,* MDL 2645 (Dkt. 25) (denying centralization and noting the limited number of cases – 15). The Panel should do the same here, where only seven separate actions are

pending and informal coordination is already occurring.

### 2. Voluntary coordination among the parties is a reasonable alternative to transfer.

Section 1407 transfer has been denied where alternatives to centralization exist. The Panel has repeatedly emphasized that centralization under Section 1407 "should be the last solution after considered review of all other options." *In re Geico*, 2021 WL 4704797 at *1 (citing *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). An alternative to transfer exists where, as here, the "conventional case handling practices in the districts in which the actions are filed would be adequate for management of the litigation[.]" Multidistrict Litigation Manual, § 5.33 (2015). When such preferable alternatives exist, Section 1407 transfer will not "serve the convenience of the parties and witnesses or promote the just and efficient conduct of the actions." See Multidistrict Litigation Manual, § 5.33 (citing 28 U.S.C. § 1407(a)).

Plaintiffs summarily conclude that consolidation is necessary to avoid duplicative discovery. *See* Plf's Motion, p. 5. However, given the small number of cases involved, other methods of coordination can minimize the risk of duplicative discovery. As the Panel has long understood, such methods might include:

> notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all actions; and any party could seek orders . . . directing the parties to coordinate their pretrial efforts; and either party may request from the appropriate district courts that discovery completed in any action . . . be made applicable to those actions.

*In re Sears, Roebuck & Co. Employment Practices Litig.*, 487 F. Supp. 1362, 1364 (J.P.M.L. 1980) (denying motion to transfer five actions because suitable alternatives were available). This Panel has admonished that where, as here, a litigation is comprised of a small number of cases, "informal cooperation among the involved attorneys and courts is both practicable and preferable."

7

*In re Ne. Contaminated Beef Prods. Liab. Litig.*, 856 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012); *see also In re Intuitive Surgical*, 883 F. Supp. 2d at 1340 ("We consider voluntary coordination among the parties and the involved courts of these relatively few actions to be a preferable alternative to centralization at this time."); *accord In re Abbott Labs., Inc., Similac Prods. Liab. Litig.*, 763 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011); *see also In re: SFPP, L.P. Railroad Property Rights Litigation,* MDL 2645 (Dkt. 25) (denying centralization and noting the limited number of cases and the overlapping counsel groups made informal coordination practicable).

The informal coordination that the Panel typically prefers is not only possible, but is already happening. The two *Tucker* actions were consolidated in the Western District of Missouri before Judge Bough. *See Tucker*, Dkt. 18. And BPS Direct, LLC is currently seeking consolidation of the three Pennsylvania actions. *See Vonbergen*, Dkt. 7; *Cornell*, Dkt. 7. BPS and Cabela's Defendants understand that Plaintiffs' counsel in the varying jurisdictions are already coordinating amongst themselves and, further, BPS and Cabela's Defendants are willing to voluntarily coordinate relevant discovery with plaintiffs, should the cases proceed to discovery. *See In re Chilean Nitrate Products Liab. Litig.,* 787 F. Supp. 2d 1347, 1347–48 (J.P.M.L. 2011) (denying transfer because defendant offered to coordinate discovery and depositions in the few cases presented for consolidation); *In re G.D. Searle & Co., 'Copper 7' IUD Prods. Liab. Litig.*, 483 F. Supp. 1343, 1344 (J.P.M.L. 1980) (noting that a consolidation's efficiency can be unnecessary when the parties stipulate "that any discovery relevant to more than one action may be used in all those actions"). BPS and Cabela's Defendants are also willing to coordinate pretrial proceedings with any other plaintiffs who bring lawsuits based on Defendants' session replay software. Because the involved counsel can coordinate informally—and have been doing so with marked

8

success—centralization under Section 1407 is not necessary here.[3] *See, e.g.*, *In re Gen. Mills, Inc. Yoplus Yogurt Prods. Mktg. & Sales Practices Litig.*, 716 F. Supp. 2d 1371, 1372 (J.P.M.L. 2010) (finding transfer unnecessary where the parties had "every ability to cooperate and minimize the possibilities of duplicative discovery and/or inconsistent pretrial rulings").

### 3. These cases present significantly different legal issues.

Transfer would also be unlikely to promote fairness and efficiency because, while all of the actions contain some factual overlap, many of the significant questions of law and fact in the cases do not overlap. Instead, claims overlap within the various states—which is why informal coordination within the relevant jurisdictions is the most efficient means of coordination.

As discussed above, each of the Pennsylvania matters—*Calvert*, *Vonbergen*, and *Cornell*—presents a claim under the Pennsylvania Wiretap Act. *Montecalvo* asserts a claim under the Massachusetts Wiretapping Statute. The *Tucker* action asserts a variety of claims including claims pursuant to the Missouri Wiretap Act, the Missouri Merchandising Practices Act, Trespass to Chattels, the Electronic Communications and Protection Act, and the Computer Fraud and Abuse Act. Lastly, although the parties are exploring resolution of the *Moore* case, that case presents claims under the California Penal Code and the ECPA. Thus, these matters will present *drastically* different legal issues that will not be made more efficient by consolidation.

As an example, the Pennsylvania, California, Massachusetts and Maryland wiretap statutes require two-party consent, whereas the Missouri and federal laws permit single-party consent. However, even amongst two-party consent states, in the recent *Montecalvo* briefing, Plaintiff went to great lengths to highlight differences between the Massachusetts statute and the Florida statute,

---

[3] Indeed, had Plaintiffs desired centralization, each could have filed in the Western District of Missouri initially, or presently could file a section 1404 motion to transfer to the Western District of Missouri.

9

in an attempt to distinguish Florida precedent dismissing session replay wiretap cases at the motion to dismiss stage. *See Montecalvo*, Dkt. 21, pp. 10–11.

Not only do the legal questions presented in each of these actions vary, so too do the fact questions. While Plaintiffs argue that Defendants' use of session replay is uniform across states, that fact is not dispositive of the issues presented by these cases. Rather, should courts find that the pending complaints are sufficient to state claims, the facts that will be critical for the adjudication of various legal issues will relate to each particular plaintiff's use of the websites, including information (if any) entered, and each particular plaintiff's consent and/or knowledge of Defendants' privacy policy. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) (remanding summary judgment order for the district court to analyze whether the plaintiff's "conduct using the [website] demonstrated she consented"). There is likewise only limited overlap in the requested class definitions - other than based on jurisdiction, consistent with Defendants' pending efforts to consolidate - *Calvert, Vonbergen and Cornell* all seek certification of Pennsylvania-based classes of Pennsylvania residents; *Montecalvo* seeks certification of a Massachusetts class; *Hernandez* seeks certification of a Maryland class; *Moore* seeks certification of a nationwide class and a California subclass, while *Tucker* seeks certification of a nationwide class and a Missouri subclass.

Moreover, because these actions are governed by law from different states, there is no risk of inconsistent rulings, should each case proceed in its home venue. *See In re Skinnygirl Margarita Bev. Mktg. & Sales Pracs. Litig.*, 829 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) ("In addition, centralization may not prevent either conflicting or multiple rulings, because plaintiffs bring their claims under the laws of different states."). It would only make sense that courts applying different laws to different facts would occasionally reach different conclusions.

### 4. Several cases have pending motions to dismiss that could dramatically lower the number of cases pending.

Of the seven actions Plaintiff seeks to consolidate, three have motions to dismiss pending. In *Montecalvo*, the motion to dismiss has been fully briefed and on-file with the Court since February 20, 2023. In *Calvert* and *Cornell*, the motions to dismiss have been filed, and plaintiffs' responses are due on March 6 and March 16, respectively, though plaintiffs in both cases have sought stays pending this Panel's adjudication of the present Motion. Rule 12(b)(6) motions "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). Consolidation is designed to assist with discovery and fact-finding, and motions to dismiss should be heard before a transfer so that the transferee Court can avoid overseeing needless discovery and fact-finding. This is particularly true here, where these cases put forth a novel legal theory—arguing that the use of session replay software on website constitutes wiretapping. Such claims remain untested in many jurisdictions, for example Defendants are not aware of any law finding that session replay allegations state a cause of action under state wiretap statutes in Massachusetts or Maryland (much less violate the Computer Fraud and Abuse Act or constitute a trespass to chattels). And cases in other jurisdictions have reached differing outcomes based on the various elements of the statutes, *see, e.g.*, *Connor v. Whirlpool Corp.*, Case No. 2:21-cv-14180-WPD. Dkt. 31 (S.D. Fla. Sept. 15, 2021) ("the FSCA does not apply to claims regarding session replay technology software on a commercial website"), and have dismissed intrusion upon seclusion claims s*ee, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 123 (W.D. Pa. 2019) (dismissing intrusion upon seclusion claim because the defendant's use of session replay software did not amount to "conduct that may outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities"). Indeed, some of these cases may not even exist after the courts address the motions to dismiss.

11

Moreover, these dispositive motions address unique local issues. For example, the *Montecalvo* motion argues that plaintiff's claims under the Massachusetts Wiretapping Statute and for Intrusion Upon Seclusion are not cognizable under Massachusetts law. In *Calvert* and *Cornell*, on the other hand, BPS and Cabela's Defendants argue that plaintiff's claims under the Pennsylvania's Wiretapping and Electronic Surveillance Control Act and for Intrusion Upon Seclusion should be dismissed under relevant Pennsylvania law. These types of local issues should be addressed by local courts, not by a centralized jurisdiction that is not acquainted with the governing law. *See* MANUAL FOR COMPLEX LITIGATION § 20.131, at 220–21 (4th ed. 2004).

### 5. Allowing these cases to proceed separately will not inconvenience witnesses or the parties.

Transfer and consolidation would not serve to convenience witnesses or the parties. As explained above, should these cases survive motions to dismiss, individualized discovery regarding each plaintiff's website use, the "contents" of their "communications", and consent will be necessary. This process will not be made any more efficient by centralizing these cases in the Western District of Missouri, which would require the majority of plaintiffs to pursue their claims in a venue far from their homes, a venue they did not originally select, or in any other district.[4] While the Western District of Missouri is BPS and Cabela's Defendants' home venue, any Defendant depositions would occur in the Western District of Missouri anyway, and this is not a case involving a significant number of fact witnesses or physical evidence, such that proximity should be a determinative factor. For these reasons, centralization would not "enhance the convenience of the parties." *In re Scotch Whiskey*, 299 F. Supp. at 544.

---

[4] Defendants do not believe centralizing all cases in the Eastern or Western District of Pennsylvania will add any efficiencies either. (*See* Dkt. 12) While the Eastern or Western District of Pennsylvania may be in closer geographic proximity to many plaintiffs, the Western District of Missouri is Defendants' home venue. If an MDL is to be created, centralization should occur in the Western District of Missouri.

## **CONCLUSION**

BPS and Cabela's Defendants respectfully request that the Panel deny Plaintiff's motion for transfer to the Western District of Missouri pursuant to 28 U.S.C. § 1407.

DATED: March 8, 2023                    Respectfully Submitted,

*/s/ Jennifer A. McLoone*
Alfred J. Saikali
Jennifer A. McLoone
SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, FL 33131
Tel: (305) 358-5171
Fax: (305) 358-7470
asaikali@shb.com
jmcloone@shb.com

Anna A. El-Zein
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
aelzein@shb.com

*Counsel for BPS and Cabela's Defendants*